IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 22, 2018 Session

## JOHNNY STEPHEN FRANCIS v. JANET KIMBERLEY HUGHES ET AL.

Appeal from the Chancery Court for Bradley County
No. 2015-CV-54     Jerri S. Bryant, Chancellor

No. E2017-02139-COA-R3-CV

The trial court determined that the defendant, Janet Kimberly Hughes, breached her fiduciary duty to the plaintiff, Johnny Stephen Francis, by utilizing a power of attorney to withdraw funds from Mr. Francis's bank account for Ms. Hughes's sole benefit. The trial court ordered Ms. Hughes to repay those funds. Ms. Hughes timely appealed. Because Ms. Hughes has failed to comply with Tennessee Rule of Appellate Procedure 27 and Tennessee Court of Appeals Rule 6, we dismiss this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Janet Kimberley Hughes, Cleveland, Tennessee, Pro Se.

H. Franklin Chancey, Cleveland, Tennessee, for the appellee, Johnny Stephen Francis.

**MEMORANDUM OPINION[1]**

Mr. Francis filed a complaint against Ms. Hughes in the Bradley County Chancery Court on March 6, 2015. Mr. Francis alleged that he and Ms. Hughes had lived together and been involved in a social relationship for many years. Mr. Francis stated that he provided the sole means of support for the couple when they lived together, asserting that he accomplished this through the use of "several hundred thousand dollars of assets

---

[1] Tennessee Court of Appeals Rule 10 provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

which he possessed prior to beginning his relationship with [Ms. Hughes]." Mr. Francis alleged that during their relationship, he purchased vehicles for Ms. Hughes and placed her name on certain of his bank accounts. Mr. Francis claimed that his health had begun to decline in recent years, such that he executed a power of attorney on April 5, 2011, designating Ms. Hughes as his attorney-in-fact.

On January 2, 2015, Mr. Francis was arrested based on Ms. Hughes's allegations that Mr. Francis had abused her. Mr. Francis was subsequently held without bond for approximately thirty-two days. Mr. Francis alleged in his complaint that while he was in jail, Ms. Hughes "broke into" his safe and removed the power-of-attorney document. Ms. Hughes then used the power of attorney to withdraw $231,912 from a bank account held solely in Mr. Francis's name. According to Mr. Francis, Ms. Hughes also took various items of personalty from Mr. Francis's home, as well as his dog. Mr. Francis averred that Ms. Hughes was guilty of conversion and breach of fiduciary duty. Mr. Francis sought return of his money, pet, and property as well as an award of damages. Mr. Francis also sought a temporary injunction ordering Ms. Hughes to immediately pay $231,912 into the court's registry. The trial court entered such injunction on an *ex parte* basis.

Ms. Hughes filed an answer to the complaint, denying the material allegations regarding fault. Ms. Hughes also filed a counter-complaint, alleging that Mr. Francis had emotionally, verbally, and physically abused her during their relationship. Ms. Hughes characterized the relationship as "one wherein [Mr. Francis] controlled [Ms. Hughes's] actions and kept her as his captive under threat of death." Ms. Hughes also claimed that Mr. Francis regularly drugged her with narcotics and benzodiazepines without her knowledge by slipping the substances into her beverages. Ms. Hughes averred that Mr. Francis took money from her "by acts of violence, threats of violence and coercion" and that she relinquished the funds to him based on his threats that he would hurt or kill her if she refused. In total, Ms. Hughes claimed that Mr. Francis had taken $328,815 from her, placing the funds in a bank account solely in his name.

The trial court conducted a hearing regarding the temporary injunction and subsequently entered an order on April 22, 2015, directing Ms. Hughes to deposit the funds at issue (or any property purchased by the use of such funds) with the Clerk and Master. The court also enjoined both parties from selling or otherwise disposing of any property at issue in this matter. On July 17, 2015, the court entered an agreed mutual restraining order, prohibiting all contact between the parties.

On October 16, 2015, Mr. Francis filed a motion seeking to add Kevin Crye as an additional defendant in this matter. Mr. Francis asserted that Mr. Crye had received monies from Ms. Hughes and/or that Ms. Hughes purchased items for Mr. Crye with the

disputed funds. Ms. Hughes filed a response, denying that she had given funds to Mr. Crye, except for repayment of monies owed to him. Ms. Hughes opposed Mr. Crye's joinder as "a middle school plan of retaliation against the new romantic interest of [Mr. Francis's] former partner." The trial court ultimately allowed Mr. Francis to add Mr. Crye as a party defendant. On October 19, 2015, the trial court ordered Ms. Hughes to provide an accounting with supporting documentation regarding the funds at issue. On January 12, 2016, Mr. Crye filed an answer to the amended complaint, denying liability.

The trial court conducted a hearing in this matter on August 16, 2017, subsequently entering an order on October 10, 2017. The court found that Mr. Francis and Ms. Hughes were involved in a relationship from some point in 2006 through January 2, 2015. The court found that in December 2012, while Mr. Francis was on probation, Ms. Hughes called Mr. Francis's probation officer and told him that Mr. Francis had assaulted her. Mr. Francis was arrested on January 6, 2015, and held without bond for thirty-two days.

The trial court found that while Mr. Francis was incarcerated, Ms. Hughes and Mr. Crye removed two vehicles, a dog, and various items of personalty from the home Mr. Francis and Ms. Hughes had shared. The court also found that Ms. Hughes utilized a power of attorney Mr. Francis had executed in 2011 to withdraw $231,912 from Mr. Francis's bank account. The trial court further found that Ms. Hughes's accounting of the funds she spent following the parties' separation was not credible. The court noted that Ms. Hughes had voluntarily dismissed the order of protection she obtained against Mr. Francis in January 2015 and that the criminal charges against Mr. Francis were also dismissed.

The trial court also noted that Mr. Francis denied having abused Ms. Hughes. Rather, Mr. Francis testified that Ms. Hughes "did as she pleased" and that they bought and sold things to earn money. Mr. Francis admitted that Ms. Hughes had bruising on her body, but he denied assaulting her, stating that they were both "on drugs" at the time. Mr. Francis also stated that Ms. Hughes used the power of attorney to take money out of his individually titled bank account while he was in jail without his permission. Mr. Francis testified that when he returned home after his incarceration, his belongings were gone.

The trial court found neither party to be a credible witness. The court did find, however, that Ms. Hughes had used the power of attorney for her own benefit, triggering the presumption that the use was improper. As the court stated:

> [Ms.] Hughes must prove that the transaction was fair. She owed a duty of
> honesty and fair dealing to [Mr. Francis], even though she alleged he

abused her for years. [Ms.] Hughes' conduct of self-help and unfair dealing does not lend credibility to her pattern of action. If the money were really hers, she could have filed a lawsuit and had the account frozen until the court made a determination. Instead, she had [Mr. Francis] arrested, took the money, moved in with her boyfriend and either spent or hid the money, except for $60,000 that is being held in the registry of the court. Much of her testimony is not believable concerning not only the accounting but also her allegations that [Mr. Francis] was bullying her. There is no cause of action by [Mr. Francis] for the money taken from the joint account. Conversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property. Hanna v. Sheflin, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008). In this case, [Ms.] Hughes exercised dominion and control over [Mr. Francis's] property in defiance of [Mr. Francis's] rights. [Ms.] Hughes' defense to this cause of action is that while she may have exercised control over the funds in defiance of [Mr. Francis], it is her position the funds belonged to her. This same argument was raised in Taylor v. Taylor, [No. M2007-00565-COA-R3-CV,] 200[8] WL 1850807 [(Tenn. Ct. App. Apr. 24, 2008)], an unreported case, where the Court of Appeals held that Defendant's claim of taking funds was unjustified. In that case, the court pointed out that an appropriate recourse was available, and that "pursuing self-interest as is inherent in his receipt of the property, violated his duty to act in the best interest of his mother" (See Taylor above). In this case, [Mr. Francis] received no benefit from [Ms.] Hughes' use of the Power-of-Attorney. This case was tried as a breach of fiduciary [duty] case through the inappropriate use of a Power-of-Attorney. The Court must rule whether it is appropriate when one thinks they have had things stolen from them, to steal those things back. The Court does not think so. [Ms.] Hughes has failed to prove her claims by clear and convincing evidence.

The trial court accordingly ordered that certain items of personalty in Mr. Crye's possession would be returned to Mr. Francis, and the court awarded to Mr. Francis a judgment against Ms. Hughes in the amount of $171,000 (in addition to the $60,000 held in the court's registry). Ms. Hughes timely appealed. Subsequent to the filing of her notice of appeal, Ms. Hughes filed a notice that no transcript or statement of the evidence would be filed.

As a threshold matter, we address Mr. Francis's issue regarding Ms. Hughes's failure to comply with the Tennessee Rules of Appellate Procedure and the rules of this Court. Ms. Hughes has filed an appellate brief in this matter that is eight pages in length.

Following our review of this document, we determine that Ms. Hughes has failed to comply with Tennessee Rule of Appellate Procedure 27 and Tennessee Court of Appeals Rule 6, such that this appeal must be dismissed.

We recognize that Ms. Hughes is a *pro se* litigant and respect her decision to proceed self-represented. With regard to self-represented litigants, this Court has explained:

> *Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden. Conducting a trial with a *pro se* litigant who is unschooled in the intricacies of evidence and trial practice can be difficult. Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training.

*Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) (internal citations omitted). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). This Court must "be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Id*. Furthermore, "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *See Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009), *perm. app. denied* (Tenn. May 20, 2010) (quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)).

Tennessee Rule of Appellate Procedure 27 provides in pertinent part:

(a)    Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

    (1)    A table of contents, with references to the pages in the brief;

    (2)    A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

    \* \* \*

    (4)    A statement of the issues presented for review;

(5)     A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6)     A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7)     An argument, which may be preceded by a summary of argument, setting forth:

   (A)     the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

   (B)     for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues) . . . .

(8)     A short conclusion, stating the precise relief sought.

Similarly, Tennessee Court of Appeals Rule 6 provides in pertinent part:

(a)     Written argument in regard to each issue on appeal shall contain:

   (1)     A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

   (2)     A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

> (3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
>
> (4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.
>
> (b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Taking into account and respecting Ms. Hughes's *pro se* status, we still must conclude that her appellate brief contains significant deficiencies with regard to the above-listed requirements. Most notably, Ms. Hughes's brief completely fails to comply with the requirements concerning a proper written argument in regard to each issue on appeal. Ms. Hughes did not set forth the "contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record." *See* Tenn. R. App. P. 27. Moreover, Ms. Hughes failed to provide any statements setting forth the "alleged erroneous action of the trial court" or the "citation to the record where the erroneous . . . action is recorded"; statements "showing how such alleged error was seasonably called to the attention of the trial judge" or a citation therefor; or statements "reciting wherein appellant was prejudiced by such alleged error." *See* Tenn. Ct. App. R. 6.

This Court has previously held that a "skeletal argument that is really nothing more than an assertion will not properly preserve a claim." *See Chiozza*, 315 S.W.3d at 489 (quoting *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006)). Ms. Hughes's entire legal argument contained in her appellate brief consists of one sentence with no citations to legal authority to support her contentions. *See* Tenn. R. App. P. 27; Tenn. Ct. App. R. 6. "Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). As the *Bean* Court further explained:

> For good cause, we may suspend the requirements or provisions of these rules in a given case. However, the Supreme Court has held that it

will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the rules of this Court. *Crowe v. Birmingham & N.W. Ry. Co.,* 156 Tenn. 349, 1 S.W.2d 781 (1928). Plaintiff's failure to comply with the Rules of Appellate Procedure and the rules of this Court waives the issues for review. *See Duchow v. Whalen,* 872 S.W.2d 692 (Tenn. Ct. App. 1993); *see also Lucas v. Lucas,* 1998 WL 136553 (Tenn. Ct. App. March 27, 1998).

*Bean*, 40 S.W.3d at 54-55.

In the instant case, the deficiencies within Ms. Hughes's appellate brief are so substantial that it is impossible for this Court to discern Ms. Hughes's argument and the relevant facts in order to conduct a meaningful review. As this Court determined in *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014):

We are not unmindful of Plaintiffs' pro se status and have attempted to give them the benefit of the doubt whenever possible. Nevertheless, we cannot write Plaintiffs' brief for them, and we are not able to create arguments or issues where none otherwise are set forth. Likewise, we will not dig through the record in an attempt to discover arguments or issues that Plaintiffs may have made had they been represented by counsel. To do so would place Defendants in a distinct and likely insurmountable and unfair disadvantage as this Court would be acting as Plaintiffs' attorney.

Similarly, we cannot unfairly disadvantage Mr. Francis in this matter by serving as Ms. Hughes's attorney. *See id.* Therefore, Ms. Hughes's issues presented on appeal are deemed waived. *See Bean*, 40 S.W.3d at 54-55.

<u>Conclusion</u>

For the reasons stated above, the appeal of this matter is dismissed. The case is remanded to the trial court for enforcement of the trial court's judgment and collection of costs assessed below. Costs on appeal are assessed to the appellant, Janet Kimberley Hughes.

_____
THOMAS R. FRIERSON, II, JUDGE